IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No: 1:21-cr-00063 (APM) |
| | : | |
| | : | 18 U.S.C. § 1001(a)(2) |
| v. | : | |
| MAXIMO RAMON MARTE, | : | |
| Defendant. | : | |

**STATEMENT OF OFFENSE**

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Maximo Ramon Marte, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

1. At all times relevant to this Statement of Offense, the defendant was a United States citizen employed by the United States Department of State ("DOS"), working as an Information Programs Officer and performing work in the area of information management. The defendant had served in the United States military and began working for the DOS in around 2001. The defendant was assigned to work at U.S. diplomatic facilities in various locations throughout the world, including Nigeria (from around 2010 through 2015) and Benin (from around 2015 through 2019). The defendant was responsible for performing and supervising the

1

performance of system administration on both classified and unclassified network systems for DOS.

2. The defendant was granted a Top Secret security clearance in connection with his work for DOS, and he had access to classified and unclassified government information on an ongoing basis. Classified information is material deemed sensitive by the U.S. government and for which access to is restricted by law and regulation; the unauthorized disclosure of classified information could endanger the national security of the United States. Federal government employees with access to Top Secret government information, including the defendant, are required by federal regulations to undergo national security reinvestigations every five years. The national security reinvestigation is part of the U.S. government's continuous evaluation of a person's suitability for a national security position that involves access to classified information. To make this determination, U.S. government investigators rely on, among other things, the SF-86 Questionnaire for National Security Positions and background investigation interviews with the applicant. The national security reinvestigation is a matter within the jurisdiction of the Executive Branch of the U.S. Government.

3. The defendant electronically submitted an SF-86 background investigation form on or around April 5, 2018, as part of his reinvestigation for a national security position. The instructions on the form state that knowingly falsifying or concealing a material fact could result in criminal prosecution. The defendant certified on the SF-86 that the information provided was true, correct, and complete to the best of his knowledge.

4. On the SF-86 form, the defendant denied having "ever had any foreign financial interests (such as stocks, property, investments, bank accounts, ownership of corporate entities, corporate interests, or exchange traded funds" in which he had "direct control or direct

ownership," with the exception of one piece of foreign real estate owned by his spouse. The defendant also denied having been involved in any foreign business activities within the past seven years, including through ownership, co-ownership, work as a business consultant, or providing financial support.

5. On May 23, 2018, the defendant participated in a background investigation interview with an agent of the U.S. Government as part of the national security reinvestigation. The interview occurred via video-conference, with the defendant located in Benin and the investigator located in Europe. At the outset of the interview, the defendant was informed that federal law makes it a crime to knowingly falsify or conceal material facts. The defendant denied having any financial interests in a foreign country – or financial interests in any foreign-owned or foreign-operated business – that could make him vulnerable to foreign influence.

6. On September 27, 2019, the defendant participated in another background investigation interview with an agent of the U.S. Government as part of the national security reinvestigation. This interview occurred in Washington, D.C. The defendant was again informed that it was a federal crime to falsify or conceal material information. The defendant denied having had any close and continuing contacts with a foreign national with whom he has common business interests. The defendant also denied having ever had any foreign financial interests in which he had direct control or ownership (including stocks, properties, investments, bank accounts, ownership of corporate entities or interests), other than the piece of foreign real estate owned by his spouse as previously disclosed. The defendant also denied having provided any advice or support in the previous seven years to any individual with a foreign business or to any other foreign organization. Finally, the defendant denied having been involved in any business ventures with foreign nationals over the previous seven years, with the exception of one

incident where, the defendant explained, he was defrauded out of some money in Nigeria that he had invested in an effort to help a friend.

7. Information that the defendant provided in his background reinvestigation, including in the September 27, 2019, interview, was inaccurate.

8. The defendant failed to disclose that he served as the Director and Chief Executive Officer of a Nigerian business organization starting in 2013 (when the defendant was assigned to work in Nigeria by DOS) at the latest, and continuing through at least 2018. The defendant operated this foreign business organization with a Nigerian national who was a locally-employed staff member at a U.S. diplomatic facility in Nigeria. The Nigerian business organization was intended to help facilitate the sale of petroleum from Nigeria to other foreign countries including Benin and Canada, and the defendant personally signed various sale proposals in 2013 and 2014 (while he was stationed at the DOS diplomatic facility in Nigeria). The defendant also opened a Nigerian bank account on behalf of the Nigerian business organization, and in 2015 the defendant transferred money from his personal checking account in the United States to the Nigerian bank account.

9. The defendant also failed to disclose efforts in the spring and summer of 2018 to facilitate the sale of petroleum to Syria, during a time period when Executive Order prohibited U.S. citizens from supplying services to Syria due to its ongoing civil war. The defendant communicated in these efforts with a foreign national whom the defendant had been informed worked for a foreign-located oil company. The foreign national sent an e-mail message to the defendant on May 20, 2018 (three days before the first background investigation interview), seeking light crude oil to be destined to Syria. The defendant replied to the e-mail message the next day. The defendant emphasized to the foreign national that "in light of the U.S. and

European commercial sanctions in place against Syria, the logistics on both sides must be 110% perfect." The defendant stated that he and a partner "will ensure the transaction is structured correctly. Including putting in place the necessary safety mechanism for all involved." The defendant went on to advise that the vessel transporting the oil must be looked at "very carefully to ensure the nominated vessel flag isn't part of the U.S. or E.U." In the following days, the foreign national sent contract documents to the defendant, listing the buyer of the petroleum as a Syrian business organization, and an Iranian bank providing a financial guarantee. The defendant's communications with the foreign national about the planned business venture continued into mid-summer 2018 but did not ultimately lead to an agreement in that instance to facilitate the shipment of petroleum to Syria.

10. The defendant's false statements to a government agency on September 27, 2019, were material and had a natural tendency to influence the agency's decision on whether to maintain the defendant's access to classified information in a national security position of employment. The false statements included that the defendant had never had direct control over any undisclosed foreign financial interests, and that the defendant had not provided advice and support to any individual with a foreign business within the last seven years. The defendant made the false statements willfully, and with knowledge that he was making materially false statements to a government agency.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By: */s/ Michael J. Friedman*
Michael J. Friedman
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, Maximo Ramon Marte, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 10/18/2021

Maximo Ramon Marte
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 10/18/2021

Jeffrey O'Toole, Esq.
Attorney for Defendant