UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 21-CR-00063 (APM) |
| v. | : | |
| | : | |
| MAXIMO RAMON MARTE, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America respectfully submits this memorandum in aid of sentencing.

## BACKGROUND

The defendant was charged by indictment on February 2, 2021, with two violations of 18 U.S.C. § 1001(a)(2) (false statements) (Dkt No. 1).   On October 20, 2021, the defendant pleaded guilty to count one of the indictment.   The guilty plea was entered pursuant to a plea agreement (Dkt No. 19) in which the United States agreed to dismiss the remaining charge at the time of the sentencing.   Sentencing is scheduled for January 28, 2022.

At the plea hearing, the defendant admitted that he made false statements to an agent of the U.S. government as part of a national security reinvestigation to evaluate his suitability for a national security position that involved access to classified information.  (Dkt No. 19 at 2-5.) The defendant had been employed by the United States Department of State ("DOS") since 2001, working at diplomatic facilities in various locations around the world including Nigeria (from around 2010 through 2015) and Benin (from around 2015 to 2019).   The defendant was granted a Top Secret security clearance in connection with his work.   (*Id*. at 1-2.)

In a written SF-86 form submitted on April 5, 2018[1], the defendant denied having "ever had any foreign financial interests (such as stocks, property, investments, bank accounts, ownership of corporate entities, corporate interests, or exchange traded funds)" in which he had "direct control or direct ownership," with the exception of one piece of foreign real estate owned by his spouse.   The defendant also denied having been involved in any foreign business activities within the past seven years, including through ownership, co-ownership, work as a business consultant, or providing financial support.  (Dkt No. 20 at 2-3.)   In a background investigation interview on May 23, 2018, the defendant denied having any financial interests in a foreign country – or financial interests in any foreign-owned or foreign-operated business – that could make him vulnerable to foreign influence.   (*Id*. at 3.)

On September 27, 2019, in a second background investigation interview that occurred in Washington, D.C., the defendant made similar statements, denying that he: (1) had any close and continuing contacts with a foreign national with whom he has common business interests; (2) had any foreign financial interests in which he had direct control or ownership, other than the real estate owned by his spouse; (3) provided any advice or support in the previous seven years to any individual with a foreign business or to any other foreign organization; and (4) was involved in any business ventures with foreign nationals over the previous seven years, with the exception of one incident where the defendant stated he was defrauded out of some money in Nigeria.  (Dkt No. 20 at 3-4.)

The defendant failed to disclose that he served as the Director and Chief Executive Officer of a Nigerian business organization, from 2013 through at least 2018.   The Nigerian business

---

[1]  The SF-86 Questionnaire for National Security Positions included instructions that knowingly falsifying or concealing a material fact could result in criminal prosecution.  (Dkt No. 20 at 2.)

2

organization was intended to help facilitate the sale of petroleum from Nigeria to other foreign countries including Benin and Canada, and the defendant personally signed various sale proposals in 2013 and 2014.   The defendant operated the business with a Nigerian national and also opened a Nigerian bank account on behalf of the organization.   (Dkt No. 20 at 4.)   The defendant also failed to disclose efforts that he made in the spring and summer of 2018 to facilitate the sale of petroleum to Syria, during a time when Executive Order prohibited U.S. citizens from supplying services to Syria due to its ongoing civil war.   The defendant traded e-mail messages in these efforts with a foreign national, and he acknowledged in the messages understanding that there were U.S. and European commercial sanctions in place against Syria.   The defendant provided advice to the foreign national, including that the vessel transporting the oil must not be flagged by a United States or European Union entity.   The defendant's efforts did not ultimately lead to an agreement to facilitate the shipment of petroleum to Syria.   (*Id*. at 4-5.)

The defendant admitted at the plea hearing that he made the false statements willfully, and with knowledge that he was making materially false statements to a government agency.   (Dkt No. 20 at 5.)

## ARGUMENT

The United States respectfully recommends that the defendant be sentenced to three years of probation and be required to pay a $500 fine and complete 100 hours of community service, among other standard conditions of probation.

### I.     Statutory Penalties

The statutory maximum penalty for a violation of 18 U.S.C. § 1001(a)(2) includes up to five years of imprisonment; a fine of up to $250,000 or twice the pecuniary gain or loss of the offense pursuant to 18 U.S.C. § 3571; and a term of supervised release of up to one year pursuant

to 18 U.S.C. § 3583(b)(2).   A term of probation of not less than one year nor more than five years is authorized under 18 U.S.C. § 3561(c)(1).

## II.      Application of the Sentencing Guidelines

The Sentencing Guidelines provide advisory recommendations which the courts "must consult . . . and take . . . into account when sentencing," *United States v. Booker*, 543 U.S. 220, 264 (2005), a criminal defendant for violations of the United States Code.   As the Supreme Court has explained, "[a]s a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark" in for determining the appropriate sentence.   *Gall v. United States*, 552 U.S. 38, 49 (2007).

The parties agreed at the plea hearing that the following Sentencing Guidelines sections apply.   First, the base offense level under U.S.S.G. § 2B1.1(a)(2) is 6.   Second, two points should be deducted for acceptance of responsibility under U.S.S.G. § 3E1.1, for a total Estimated Offense Level of 4.

The parties also agreed that the defendant has no prior criminal convictions, and an estimated Criminal History Category of either I.

The parties agreed that the Estimated Guidelines Range is either 0-6 months of imprisonment and that the estimated applicable fine range is $500 to $9,500.

## III.      Statutory Sentencing Factors

As noted above, determining the recommended sentencing range under the U.S.S.G. is the first of two required steps for sentencing under the United States Code.   The second step requires the court to consider that range, to consider other relevant factors set forth in the guidelines, and to consider the factors set forth in 18 U.S.C. § 3553(a).   *See, e.g., United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).   These factors include (1) the nature and circumstances of the

4

offense; (2) the history and characteristics of the defendant; (3) the need to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and provides the defendant with needed educational or vocational training and medical care; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records convicted of similar conduct.

### 1.   Nature and Circumstances of the Offenses

The defendant committed a serious federal criminal offense by making materially false representations to an agent of the U.S. government.   The seriousness is compounded when one considers the gravity of a national security background investigation, which evaluates a person's fitness to have access to our country's national security secrets.   The defendant undermined the integrity of the national security background investigation through his conduct.

### 2.   History and Characteristics of the Offender

The defendant has no prior arrests and no criminal convictions.   He has a 25-year history of employment serving our country in the armed forces and at the DOS.   The defendant served abroad in dangerous locations including Baghdad, Iraq, from 2004-2005.   He appears to have family support in the community.   The defendant accepted responsibility for his criminal conduct by pleading guilty at an early stage of the proceedings.

### 3.   Need to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, and to Protect the Public

The sentence must send a message to the defendant and the public that making false statements under these circumstances will not be tolerated.   The sentence must also adequately punish the defendant for his offense.   In the unique circumstances of this case, and considering the totality of the circumstances, imposition of the recommended sentence will accomplish these

5

sentencing goals, deter future misconduct, and protect the public.

### 4. Educational or Vocational Training or Medical Care

The defendant does not appear to require transitional services.

### 5. Need to Avoid Unwarranted Sentencing Disparities

The recommended sentence is within the Sentencing Guidelines range, thereby ensuring that the defendant is not subject to an unfairly disparate sentence.

### CONCLUSION

For these reasons, and considering all the unique circumstances of this case, we respectfully suggest that the defendant be sentenced to three years of probation and be required to pay a $500 fine and complete 100 hours of community service, among other standard conditions of probation.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:       /MJF/
        Michael J. Friedman
        N.Y. Bar 4297461
        Assistant U.S. Attorney
        United States Attorney's Office
        555 Fourth St., NW
        Washington, D.C. 20001
        202-252-6765
        Michael.Friedman@usdoj.gov